**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TRUE VIEW SURGERY CENTER ONE, LP, et al.,** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **CIVIL ACTION NO. 4:16-CV-01648** |
| | § | |
| **MILA NATIONAL HEALTH PLAN, et al.,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**DEFENDANTS' MOTION TO TRANSFER CASE TO DISTRICT OF
CONNECTICUT AND BRIEF IN SUPPORT**

Defendants Aaron's, Inc. Employee Welfare Benefits Plan (the "Aaron's Plan"); John Karr, alleged Plan Administrator of the Aaron's Plan; Accudyne Industries, LLC Employee Benefit Plan (the "Accudyne Plan"); Denise Darab, alleged Plan Administrator of the Accudyne Plan; BASF Corporation Employee Benefit Plan (the "BASF Plan"); George H. Muskal, alleged Plan Administrator of the BASF Plan; CACI International Inc Welfare Benefits Plan and its Plan Administrator; DaVita Health & Welfare Plan (the "DaVita Plan");[1] Cynthia Baxter, alleged Plan Administrator of the DaVita Plan; Express Care Plan; George Johnson, alleged Plan Administrator of the Express Care Plan; Satake USA, Inc. Welfare Benefit Plan (the "Satake Plan"); John Kristek, alleged Plan Administrator of the Satake Plan; TriMas Corporation Welfare Benefit Plan (the "TriMas Plan"); and, Jill Stress, alleged Plan Administrator of the TriMas Plan (collectively "the Plans") move this Court to transfer this case to the District of Connecticut.[2]

---

[1] The DaVita Health & Welfare Plan is improperly named as the "Davita, Inc. Health Plan."

[2] Defendants file this Motion reserving all defenses, including all defenses under Federal Rule of Civil Procedure 12(b), including, but not limited to, improper party, improper venue and/or lack of personal

# I. INTRODUCTION

This case does not belong in the Southern District of Texas because substantially identical lawsuits are already pending in another federal district court. Since December 2014, Plaintiffs and Cigna have been engaged in litigation in the United States District Court for the District of Connecticut.[3] Like this case, the Connecticut case concerns coverage determinations made by Cigna regarding health benefit claims submitted by Plaintiffs, entities that operate surgical centers in Texas. Cigna made coverage determinations on behalf of hundreds of employer-sponsored health benefit plans that it administers, including the Plans that file this Motion. Cigna filed the Connecticut lawsuit and seeks relief on behalf of these plans in the Connecticut case.

Plaintiffs (defendants in the Connecticut case) filed a motion to transfer the Connecticut case to this District, but the Connecticut court denied that motion after a thorough analysis of the 28 U.S.C. § 1404(a) factors. When that avenue to Texas was closed, True View Surgery Center One, LP ("True View")—one of the Plaintiffs in this case—filed seven virtually-identical cases in Texas concerning the same benefit claim determinations already at issue in the Connecticut case. Indeed, the background of this case will be familiar to this Court. On February 29, 2016, this Court considered one of the seven cases brought by True View, *Exterran Energy Solutions*, seeking relief on certain medical claims already at issue in a first-filed lawsuit pending in the District of Connecticut.[4] This Court agreed with several other courts in this District that those seven Texas cases belonged in

---

jurisdiction for the improperly named Plan Administrators, and are contemporaneously with this Motion filing a Motion to Extend Responsive Pleading Deadlines until 21 days after the Court rules on this Motion to Transfer Case to District of Connecticut.

[3] *See* Cigna's Amended Complaint (ECF. No. 34) in *Connecticut General Life Insurance Company, et al. v. True View Surgery Center One, LP*, No. 3:14-cv-01859(AVC) (D. Conn. filed Dec. 11, 2014), attached as Ex. 1.

[4] *True View Surgery Ctr. One, L.P. v. Exterran Energy Solutions Welfare Benefit Plan, et al.,* No. 4:15-cv-03286 (AHB) (S.D. Tex. filed Nov. 6, 2015). The *Exterran Energy Solutions* Complaint is attached hereto as Ex. 2.

Connecticut where the first-filed action has been pending since December 2014.[5]

Plaintiffs are once again attempting to avoid the venue rulings in the Connecticut action and circumvent the orders from four judges in this District—including this Court's order in the *Exterran Energy Solutions* case—by filing this lawsuit against more than 100 Cigna-administered healthcare plans under the same theories raised in the prior seven Texas cases. Like the prior seven cases, Plaintiffs have sued plans seeking relief on medical claims that are already before the Connecticut court and requesting the enforcement of plan terms that are already at issue in Connecticut.

Under these circumstances—where the legal and factual issues in dispute in multiple cases might substantially overlap—the "first-to-file" rule requires that later-filed cases be transferred to the court in which the earlier-filed case is pending. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This standard is easily satisfied here, as the Connecticut case was filed over 17 months prior to this case and involves nearly identical issues. Accordingly, the Court must transfer this case to the District of Connecticut.

## II.  ISSUE TO BE RULED UPON

There is one issue to be ruled upon—whether this case should be transferred to the District of Connecticut under the first-to-file rule.

When faced with a motion to transfer pursuant to the first-to-file rule, the second-filed court (this Court) is tasked with one inquiry: "determin[ing] 'the **likelihood** of substantial overlap' between the suit before it, and the suit previously filed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846 (N.D. Tex. 2009) (quoting *Cadle Co.*, 174 F.3d at 605) (emphasis added). "[O]nce a district court determines that issues in the suits **might** substantially overlap, the proper course of action is for the court to transfer the case to the first-filed court . . . ." *Id.* at 846-47

---

[5] *See* Ex. 3 (This Court's Order transferring *Exterran Energy Solutions* to the District of Connecticut).

(emphasis added) (citing *Cadle Co.*, 174 F.3d at 606). The first court can then decide "whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

### III.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    The First-Filed Connecticut Action

As with *Exterran Energy Solutions*, this case is an outgrowth of an action filed by Cigna against Plaintiffs in the District of Connecticut on December 11, 2014. Cigna brought the Connecticut action on behalf of over 300 employee benefit plans for which it serves as the claims administrator.

In the Connecticut action, Cigna alleges that the True View parties, who are ***not*** part of Cigna's provider network, have devised and implemented a fraudulent scheme to induce Cigna plan members to seek treatment at their out-of-network facilities. According to Cigna's complaint, the True View parties freely waive the plan member's cost-share obligations while charging Cigna and its plans unconstrained and grossly inflated fees in violation of plan terms and state law. Cigna seeks to recoup overpayments made on behalf of 315 plans, which (along with the specific claims at issue) are identified in exhibits to Cigna's amended complaint.[6] Cigna also seeks a declaration that its plans have no obligation to pay claims that have been, and continue to be, received from the True View parties. These unpaid claims are catalogued in separate exhibits to Cigna's amended complaint.[7] The medical claims involving the Plans that file this Motion are ***all identified in the exhibits to***

---

[6] *See* ECF Nos. 34-1 and 34-2 in the Connecticut action.

[7] *See* ECF Nos. 81-1 and 81-2 in the Connecticut action.

***Cigna's Connecticut complaint*** as claims for which Cigna seeks relief.[8]

The parties to the Connecticut action have engaged in extensive motion practice, and Honorable Judge Covello, the district judge overseeing that case, has acquired substantial familiarity with the factual background and legal issues relevant to the matter. In April 2015, the True View parties moved to transfer the Connecticut action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).[9] The Connecticut court denied that motion based in part on its finding that the focus of the complaint was on "the surgical centers' fraudulent billing practices as processed at Cigna's headquarters in Connecticut."[10] The True View parties also filed a motion to dismiss the Connecticut action.[11] In a thorough 33-page decision, the district court denied in principal part the motion to dismiss.[12] More recently, the True View parties filed a motion for judgment on the pleadings with respect to count one of Cigna's amended complaint,[13] which was denied by the Court on August 23.[14] Additional motions filed by the True View parties remain pending.[15]

**B.**   **True View Filed Seven Subsequent Actions In This District, Which Were Subsequently Transferred To Connecticut Under The First-To-File Rule**

After their motion to dismiss in Connecticut was denied, the True View parties tried a new

---

[8] Plaintiffs do not identify in their Original Complaint the claims at issue by claim number, as was done by Cigna in the Connecticut action. Nevertheless, the Plans represent that the medical claims at issue here are specifically identified in exhibits to the Connecticut action as claims for which Cigna seeks relief. *See* Ex. 4 (the highlighted medical claims at issue for the Plans on Plaintiffs' Exhibit 1 correspond to the highlighted medical claims identified in Cigna's exhibits to the amended complaint).

[9] *See* ECF No. 51 in the Connecticut action.

[10] *See* ECF No. 63 in the Connecticut action, at 11.

[11] *See* ECF No. 50 in the Connecticut action.

[12] *See* ECF No. 65 in the Connecticut action.

[13] *See* ECF No. 102 (Motion for Judgment on the Pleadings in the Connecticut action).

[14] *See* ECF No. 141 in the Connecticut action.

[15] *See* ECF No. 126 (Motion to Dismiss regarding tracing for ERISA claims); ECF No. 133 (Motion for Judgment on the Pleadings asserting collateral estoppel in the Connecticut action).

strategy, divide and conquer. True View alone filed seven virtually-identical complaints against plans in this District, while its business affiliates and co-defendants in the Connecticut action—Oprex Surgery (Houston) LP, LCS Surgical Affiliates, LP, Pasnar Houston, LLC, and Oprex Surgery (Beaumont) LP—filed counterclaims in the Connecticut action.[16] Notably, the Connecticut counterclaimants then moved to join certain plans as counterclaim defendants in the Connecticut action, ***including plans that have been named as defendants in this case***, such as the Accudyne Plan, the TriMas Plan, Sasol North America Inc. Welfare Benefit Plan a/k/a Sasol (USA) Corporation Welfare Benefit Plan (the "Sasol Plan"), and Tanya Filla.[17] The motion to join was granted on February 5, 2016.[18] There was no discernible reason for True View not to participate in the counterclaims, or for its business affiliates not to participate in the seven Texas actions, other than an apparent attempt to avoid identity of the parties in Texas and Connecticut. The Texas courts, including this Court, saw through these efforts however. In February 2016, each of these seven cases, before four different judges, was transferred to the District of Connecticut.[19]

---

[16] *See* ECF No. 75 in the Connecticut action.

[17] *See* ECF No. 86 in the Connecticut action.

[18] *See* ECF No. 97 in the Connecticut action.

[19] *See True View Surgery Ctr. One, L.P. v. Goodman Global Holdings, Inc.*, No. 4:15-cv-03287 (SL) (S.D. Tex. filed Feb. 24, 2016) (ECF No. 20) (holding the legal issues, involving the same or similar claims, were substantially the same so that litigation in both Texas and Connecticut would risk inconsistent holdings, principles of comity and sound judicial administration required litigation in Connecticut, and that no exception to the first-to-file rule applied); *True View Surgery Ctr. One, L.P. v. Exterran Energy Solutions, L.P.*, No. 4:15-cv-3286 (AHB) (S.D. Tex. filed Feb. 29, 2016) (ECF No. 24) ("For the reasons stated in Judge Lake's thorough and thoughtful memorandum opinion and order. . . this case is transferred to the Federal District Court for the District of Connecticut."); *True View Surgery Ctr. One, L.P. v. Chi. Bridge & Iron Med. Plan*, No. 3:15-cv-00310 (GCH) (S.D. Tex. filed Feb. 29, 2016) (ECF No. 15) (same); *True View Surgery Ctr. One, L.P. v. CH2M Hill Cos.*, No. 3:15-cv-00318 (GCH) (S.D. Tex. filed Feb. 29, 2016) (ECF No. 26) (same); *True View Surgery Ctr. One, L.P. v. Fairfield Indus. Inc. Med. & Life Ins. Plan*, No. 3:15-cv-00317 (GCH) (S.D. Tex. filed Feb. 29, 2016) (ECF No. 25) (same); *True View Surgery Ctr. One, L.P. v. BAE Sys. Inc.*, No. 3:15-cv-00315(GCH) (S.D. Tex. filed Feb. 29, 2016) (ECF No. 24) (same); *True View Surgery Ctr. One, L.P. v. TGS-Nopec Geophysical Co.*, No. 4:15-cv-03284 (LHR) (S.D. Tex. filed Feb. 25, 2016) (ECF No. 24) (same).

HOU:3718280.2

1.     **Judge Lake's Memorandum Opinion and Order**

In *Goodman*, the first court to order transfer to Connecticut found that the "action substantially overlaps with an action previously filed in the District of Connecticut and that there are no compelling circumstances that would bar transfer." *See* Memorandum Opinion And Order, Ex. 5 at 19.[20] In reaching that finding, the court reasoned:

> While Cigna is not a named party in the Texas Action, Cigna and its conduct is mentioned on nearly every page (and in nearly every paragraph) of the thirty-six page Complaint. . . . Most significantly, True View is a party to both actions. *Id.* at 11.

> [T]he Connecticut court will examine similar relationships and agreements between similarly situated parties. Both actions require interpretation of language in Cigna's contracts, and will also involve True View's fee-waiver decisions for patients. Because the same medical claims and legal issues are being litigated in the two actions, unless one of the actions is transferred there is a possibility of inconsistent rulings in the two actions. *Id.* at 13-14.

> Transfer will also further the "principles of comity and sound judicial administration." True View and the other Connecticut defendants filed a motion to transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a), which the Honorable Alfred V. Covello denied. . . . Transfer of this action to Connecticut will better facilitate coordination among the parties and will place the dispute before a court familiar with the central issues in the case. *Id.* at 14-15.

2.     **This Court, Judge Rosenthal and Judge Hanks adopted the reasoning set forth by Judge Lake in *Goodman***

All of the other Texas courts, including this Court, adopted the reasoning set forth in *Goodman* when determining that transfer to Connecticut was required.[21] After True View's seven Texas actions were transferred to the District of Connecticut, the True View parties filed an

---

[20] Judge Lake's opinion is also available at *True View Surgery Center One, L.P. v. Goodman Global Holdings, Inc.*, No. H-15-3287, 2016 WL 755494 (S.D. Tex. Feb. 24, 2016).

[21] *See* n.19, *supra*.

amended answer in which True View formally joined in the counterclaims against the plans.[22] Since then, the Connecticut court has assigned all seven actions transferred from this District to Judge Covello in the District of Connecticut.[23]

### C.   This Action Is Substantially Identical To The Previously-Transferred Actions

In plain disregard of the courts' prior rulings, Plaintiffs filed this cumbersome Texas action on June 9, 2016. The current lawsuit names over 200 plans and individual plan administrators and is substantially identical to the previously-transferred cases, but for the number of defendants sued. Each of the subheadings in the instant complaint corresponds directly with a subheading in the *Goodman* complaint, attached as Exhibit 6.

| *Goodman Global Holdings, Inc.* (Ex. 6) | *Mila National Health Plan* (ECF No. 1) |
|---|---|
| A. Background as to Self-Funded Health Plans Governed by ERISA (p. 5) | A. Background as to Self-Funded Health Plans Governed by ERISA (p. 55) |
| B.  Together with Cigna Defendants Owe Fiduciary Duties to the Plan's Beneficiaries (p. 8) | B.  Together with Cigna, Defendants Owe Fiduciary Duties to the Plan's Beneficiaries (p. 59) |
| C.  The Plan's Fiduciaries Together Engage in an Elaborate Scheme to Embezzle Plan Funds at the Expense of Beneficiaries (p. 9) | E. The Plan's Fiduciaries Together Engaged in an Elaborate Scheme to Embezzle Plan Funds at the Expense of its Beneficiaries – Allowed Amount (p. 69)<br>F.  The Plan's Fiduciaries Together Engaged in an Elaborate Scheme to Embezzle Plan Funds at the Expense of |

---

[22] *See* ECF No. 125 in the Connecticut action.

[23] *See True View Surgery Ctr. One, L.P. v. CH2M Hill Cos.*, No. 3:16-cv-00340-AVC (D. Conn. filed June 8, 2016 ) (ECF No. 42) (order granting motion to stay); *True View Surgery Ctr. One, L.P. v. BAE Sys., Inc.*, No. 3:16-cv-00331-AVC (D. Conn. filed June 8, 2016) (ECF No. 41) (same); *True View Surgery Ctr. One, L.P. v. Fairfield Indus. Inc. Med. & Life Ins. Plan*, No. 3:16-cv-00335-AVC (D. Conn. filed June 8, 2016) (ECF No. 40) (same); *True View Surgery Ctr. One, L.P. v. TGS Geophysical Co. Welfare Benefit Plan*, No. 3:16-cv-00322-AVC (D. Conn. filed June 8, 2016) (ECF No. 39) (same); *True View Surgery Ctr. One, L.P. v. Goodman Mfg. Co., L.P. Emp. Med. Benefit Plan*, No. 3:16-cv-00304-AVC (D. Conn. filed June 8, 2006) (ECF No. 36) (same); *True View Surgery Ctr. One, L.P. v. Exterran Energy Solutions Welfare Benefit Plan*, No. 3:16-cv-00342-AVC (D. Conn. filed June 8, 2016) (ECF No. 35) (same); *True View Surgery Ctr. One, L.P. v. Chi. Bridge & Iron Med. Plan*, No. 3:16-cv-00328-AVC (D. Conn. filed Aug. 1, 2016) (ECF No. 45) (same).

| *Goodman Global Holdings, Inc.* (Ex. 6) | *Mila National Health Plan* (ECF No. 1) |
|---|---|
| | its Beneficiaries – Cost Containment Fees (p. 72) |
| D.  Relying Upon Defendants' Representations as to Coverage, Plaintiff Provided Medically Necessary Services to Beneficiaries of the Plan (p. 17) | C.  Relying Upon Defendants' Representations as to Coverage, Plaintiff Provided Medically Necessary Services to Beneficiaries of the Plan (p. 60) |
| E.  Defendants' Wrongful Denial of Plaintiff's Claims (p. 20) | D.  Defendants' Wrongful Withhold of Claim Payments Purported to be a Denial of Plaintiff's [sic] Claims (p. 64) |
| F.  Defendants Ignored Plaintiff's Numerous ERISA Appeals Alerting Them of Cigna's Misconduct, and Improperly Denied Plaintiff's Repeated Requests for Plan Documents and Full and Fair Review (p. 22) | G.  Defendants Ignored Plaintiffs' Numerous ERISA Appeals Alerting Them of Cigna's Misconduct, and Improperly Denied Plaintiff's [sic] Repeated Requests for Plan Documents and Full and Fair Review (p. 76) |

The factual allegations in this Complaint closely track those in *Goodman*, and, at times, are verbatim:

| *Goodman Global Holdings, Inc.* (Ex. 6) | *Mila National Health Plan* (ECF No. 1) |
|---|---|
| ¶¶ 13-17 | ¶¶ 244-48 (¶ 247 is ¶ 16 verbatim) |
| ¶ 18 | ¶¶ 249-50 (¶ 250 is the second half of ¶ 18 verbatim) |
| ¶¶ 19-20 | ¶¶ 251-252 (verbatim) |
| ¶ 24 | ¶ 257 |
| ¶ 27 | ¶ 262 (verbatim) |
| ¶ 47 | ¶ 265 |
| ¶¶ 49-50 | ¶¶ 266-67 (verbatim) |
| ¶¶ 51-53 | ¶¶ 270-72 |
| ¶¶ 59-64 | ¶¶ 302-07 (note ¶¶ 302-03 is ¶¶ 59-60 verbatim) |
| ¶¶ 66-68 | ¶¶ 310-12 |
| ¶¶ 69-70 | ¶¶ 314-15 |
| ¶ 75 | ¶ 317 |

The causes of action are also nearly identical:

| *Goodman Global Holdings, Inc.* (Ex. 6) | *Mila National Health Plan* (ECF No. 1) |
|---|---|
| COUNT ONE:  Claims under § 502(a) of ERISA, 29 U.S.C. § 1132(a) (p. 28) | COUNT ONE:  Claims under § 502(a) of ERISA for Defendants' Failure to Comply with Plan Terms in Violation of ERISA (p. 81) |
| COUNT TWO:  Breach of Fiduciary | COUNT TWO:  Breach of Fiduciary |

-9-

| *Goodman Global Holdings, Inc.* (Ex. 6) | *Mila National Health Plan* (ECF No. 1) |
|---|---|
| Duty and Co-fiduciary Liability (p. 30) | Duty and Co-fiduciary Liability (p. 83) |
| COUNT THREE:  Failure to Provide Full and Fair Review (p. 32) | COUNT THREE:  Failure to Provide Full and Fair Review (p. 84) |
| COUNT FOUR:  Failure to Provide Requested and Required Documentation (p. 32) | COUNT FOUR:  Failure to Provide Requested and Required Documentation (p. 85) |
| COUNT FIVE:  Negligent Misrepresentation (p. 33) | COUNT FIVE:  Remove Plan Fiduciaries (p. 86) |
| COUNT SIX:  Attorney's Fees (p. 34) | COUNT SIX:  Attorney's Fees (p. 86) |

The *Goodman* complaint and the Complaint in the instant case are also nearly identical to the *Exterran Energy Solutions* complaint, **a case which this Court transferred to Connecticut** under the same first-to-file grounds provided in Judge Lake's thoroughly-reasoned opinion in *Goodman*.[24] The only difference between the complaints is a new Count Five which alleges that "Defendant Plan Administrators and co-fiduciary Cigna committed fiduciary breaches with actual knowledge, malice, and intent." ECF No. 1, p. 86 at ¶ 341. Count Five, however, does not rely on any new or different factual allegations, but rather, merely adds an additional legal cause of action against a significant number of defendants. In short, there is nothing new in Plaintiffs' Complaint to distinguish this case from the findings in the prior seven orders transferring the actions to Connecticut. Each factor relied on by the court in *Goodman* is equally applicable to this case.

**D.     The True View Parties Recognized They Have An "Uphill Battle" To Convince This Court To Keep This Case After *Goodman***

Based on the similarities between the cases, Cigna filed a motion in the Connecticut action to enjoin the True View parties from pursuing this action in Texas.[25] Cigna argued in its motion that because the Connecticut action was the first-filed case, the Connecticut court had authority to enjoin the True View parties from proceeding with this case in Texas. In response to Cigna's motion, the

---

[24] *See* Ex. 2 (Plaintiff's Original Complaint in *Exterran Energy Solutions*).

[25] *See* ECF No. 129 in the Connecticut action.

True View parties did not argue that Texas is the proper forum for their claims. Rather, the True View parties "recognize[d] [they] would face an **uphill battle to convince the Mila court that, despite Goodman, it should deny a motion to transfer by the Mila defendants**" and even stated **that they "might consent" to such a motion**.[26] In ruling on Cigna's motion, the Connecticut court stated:

> While "the normal chronology" would be for the court of first impression to enjoin the second court, "this procedure is not mandatory." Regardless of the action or inaction of the first court, the second court has "an independent obligation to defer to the primary of the first-filed suit." Here, the court acknowledges the similarities between the Texas and Connecticut litigation . . . [and] concludes that the Texas court is the (more) appropriate arbiter to decide what effect, if any, the first-filed doctrine has on the new Texas action.[27]

Therefore, the Plans move this Court to transfer this case to the District of Connecticut under the first-to-file rule.

## IV. ARGUMENT AND AUTHORITIES

### A. The "First-To-File Rule" Avoids Duplicative Litigation Involving Substantially Similar Cases

It is well established that duplicative litigation should be avoided wherever possible. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Duplicative litigation risks "'rulings which may trench upon the authority of sister courts,'" encourages "'piecemeal resolution of issues that call for a uniform result,'" and may even yield inconsistent judgments. *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (quoting *Cadle Co.*, 174 F.3d at 603). The "first-to-file" rule avoids duplicative litigation where two related cases are filed in separate district courts. *See id.*; *Luckett v. Peco Foods, Inc.*, No. 3:07cv85-KS-MTP, 2008 WL 534760, at *2 (S.D. Miss. Feb. 22, 2008).

---

[26] *See* ECF No. 134 in the Connecticut action at p. 12 (emphasis added).

[27] Ex. 7 at p. 2 (ECF No. 142 in the Connecticut action) (citations omitted).

**B.**   **The First-To-File Rule Requires Transfer To The First-Filed Court When There Is A Likelihood Of Substantial Overlap Between The Two Lawsuits**

Under Fifth Circuit authority, a second-filed court, i.e., this Court, is tasked with one inquiry: "determin[ing] 'the **likelihood** of substantial overlap' between the suit before it, and the suit previously filed." *Wells Fargo Bank, N.A.*, 631 F. Supp. 2d at 846 (emphasis added) (quoting *Cadle Co.*, 174 F.3d at 605); *Cadle Co.*, 174 F.3d at 605-06 (holding "[t]he district court correctly refused to act as a 'super appellate court'" by entertaining either jurisdiction or standing arguments and "properly limited its inquiry to the potential overlap between the two cases"). "[O]nce a district court determines that issues in the suits **might** substantially overlap, the proper course of action is for the court to transfer the case to the first-filed court . . . ."[28] The first court (the Connecticut court) can then decide "whether the second suit filed must be dismissed, stayed or transferred and consolidated."[29]

Whether there is a "likelihood of substantial overlap" between the first- and second-filed cases turns on the possibility of conflicting judgments, the overlapping legal and factual issues, the overlapping identity of relevant parties, and whether the evidence will overlap.[30] The named parties

---

[28] *Wells Fargo Bank, N.A.*, 631 F. Supp. 2d at 846-47 (emphasis added) (citing *Cadle Co.*, 174 F.3d at 606).

[29] *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

[30] *See, e.g.*, *DocRX, Inc. v. InforMD, LLC*, No. 14-00486-KD-B, 2015 WL 3503170, at **4–5 (S.D. Ala. June 2, 2015) (transfer under first-to-file rule appropriate where "the claims in both cases arose out of the same transaction," and where "resolution of each case will turn on the same operative facts"); *Jesco Constr. of Del., Inc. v. Clark*, No. 1:10CV453-HSO-JMR, 2011 WL 2460872, at **2–5 (S.D. Miss. June 17, 2011) (transfer appropriate where the pendency of two separate cases involving the same arrangement between the parties had the "potential for conflicting and inconsistent rulings"); *Burger v. Am. Mar. Officers Union*, Nos. 97-31099, -31100, -31158, -31291, 1999 WL 46962, at *2 (5th Cir. Jan. 27, 1999) (unpublished *per curiam* decision) (transfer under first-to-file rule appropriate where cases "raised substantially similar claims"); *Fat Possum Records, Ltd. v. Capricorn Records, Inc.*, 909 F. Supp. 442, 445 (N.D. Miss. 1995) (transfer under first-to-file rule appropriate where both actions sought to determine the status of the parties' relationship notwithstanding the fact that one action involved an alleged breach of the contract and the other action involved an alleged modification); *Tech. Ins. Co. v. Ben E. Keith Co.*, No. 3:14-CV-3476-B, 2015 WL 4367597, at *2 (N.D. Tex. July 15, 2015) (noting that the Fifth Circuit looks to whether "much of the proof adduced would likely be identical" when deciding if two cases substantially overlap) (internal quotations omitted).

and issues need not be identical for the first-to-file rule to apply.[31] All that is necessary for transfer is a finding that there is a likelihood the cases are "substantially related"—i.e., a likelihood that they present "substantially similar issues." *See id.*

**C.     At A Minimum, There Is A "Likelihood" That This Case Substantially Overlaps With The Connecticut Case Requiring Transfer To Connecticut**

There can be no doubt that this Texas case substantially overlaps with the Connecticut case, as Judge Lake and this Court has already found. Most significantly, the maintenance of these two separate lawsuits would risk conflicting judgments about many of the exact same benefit claims and exact same plan language. The two cases involve the same relevant parties and require resolution of substantially identical issues: the meaning of the same exclusionary language in Cigna's benefit plans; the propriety of Plaintiffs' "fee-forgiveness" plan; Cigna's authority to deny (or reduce) payment for claims where the plan member's cost-share obligations were waived; and whether Cigna improperly designated out-of-network claims as being subject to a contractual obligation.

**1.     The two lawsuits concern many of the same benefit claims and an overwhelming majority of the same plans, thereby creating a risk of conflicting judgments**

Plaintiffs' complaint in this case seeks damages for unpaid and/or underpaid benefit claims identified on Exhibit 1 to the Complaint. These claims are for surgical services allegedly provided to beneficiaries of various plans that Cigna administers. True View also seeks declaratory and injunctive relief concerning "the enforcement of the plan terms."[32] Many of these exact same benefit claims are at issue in the Connecticut action, where Cigna seeks a declaration that these claims are ***not*** covered

---

[31] *See, e.g.*, *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997).

[32] *See* ECF No. 1-1 (identifying claims); ECF No. 1, ¶ 325 (setting forth claim for monetary damages for unpaid benefits, as well as claims for declaratory and injunctive relief).

by the plans.[33] In fact, at least **94 of the 110** plans listed in Exhibit 1 of Plaintiffs' complaint are plans for which benefit claims are already at issue in the Connecticut action and **all** of the medical claims at issue for the Plans that file this Motion are medical claims at issue in the Connecticut action.[34]

Accordingly, both courts—the District of Connecticut and the Southern District of Texas—will be called upon to interpret the **same plan documents** and the same governing law. Not only is this litigation path wasteful and inefficient for the federal courts system and all parties involved, it presents a serious risk of conflicting judgments. Application of the "first-to-file" rule will avoid this risk. The Fifth Circuit has stated that the rule is designed to "minimize embarrassing inconsistencies by prophylactically refusing to hear a [later-filed] case" which could result in a judgment that is inconsistent with an earlier-filed case. *Cadle Co.*, 174 F.3d at 604.[35]

Here, Plaintiffs want this Court to consider questions about plan documents and plan assets. These questions—concerning many of the same plan assets and an **overwhelming majority** of the same plan documents—are already squarely before the district court in Connecticut. Because many of the plans are "self-funded" plans for which Cigna serves as the claims administrator, any judgment issued in Connecticut concerning benefit claims that Cigna is or is not required to pay

---

[33] *See* Ex. 1, ¶¶ 163–64.

[34] Ex. 4.

[35] Courts routinely transfer cases pursuant to the "first-to-file" rule when two competing cases involve distribution of the same assets or interpretation of the same documents. For example, in *Save Power Ltd.*, the Fifth Circuit found that a district judge who presided over a later-filed case abused his discretion by refusing to transfer the case to another judge hearing an earlier-filed—and substantially similar—matter. *See* 121 F.3d at 949–52. Both cases involved the rights to the assets of a wholesale distributor as determined by interests secured under a subordination agreement. *Id.* at 950–51. The district judge's failure to transfer the case resulted in inconsistent rulings, notwithstanding the fact that the defendant in the later-filed case was not a named party in the earlier-filed action. *Id.* at 951. The Fifth Circuit concluded that the district judge abused his discretion by considering the merits of the case instead of transferring it pursuant to the "first-to-file" rule. *Id.* at 952; *see also Martin v. Akers Bioscience, Inc.*, No. 8:14-cv-2835-T-33TGW, 2014 WL 7225412, at *3 (M.D. Fla. Dec. 17, 2014) (holding the "first-to-file" rule applied where two cases "concern[ed] . . . conflicting interpretations" of "the parties' respective rights and obligations" under the "same Purchase Agreement").

under the various plans will involve the assets of the plan. As such, there is a real risk of two conflicting judgments from these two cases: one judgment issued by this Court that calls for the plans (and Cigna as the plans' claim administrator) to do one thing with regard to the plans' assets, and another judgment issued by the Court in Connecticut that calls for Cigna (as the plans' claim administrator) to do a different thing with regard to the plans' assets. The *Goodman* court found that "[b]ecause the same medical claims and legal issues are being litigated in the two actions, unless one of the actions is transferred there is a possibility of inconsistent rulings in the two actions." Ex. 5 at p. 14. The same is true here. This risk of conflicting judgments warrants transfer.

>        2.      **The two lawsuits involve the same relevant parties**

As noted above, the Fifth Circuit considers the extent to which the two related cases share similar parties and substantially overlapping issues in order to determine whether the "first-to-file" rule applies. *See, e.g., Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). The named parties and issues need not be identical; rather, it is enough that the two cases "involve closely related questions or common subject matter." *Fat Possum Records*, 909 F. Supp. at 445; *Save Power Ltd.,* 121 F.3d at 950-51 (finding that a party to the second filed action is not a party to the original action does not undermine the appropriateness of transfer because "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action" and holding the district court's denial of the motion to transfer was an abuse of discretion); *Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*, No. SA: 04-CA-864-XR, 2005 WL 357657, at *2 (W.D. Tex. Feb. 1, 2005). Transfer pursuant to the "first-to-file" rule is especially appropriate where "much of the proof adduced [in the two cases] would likely be identical." *Int'l Fid. Ins.*, 665 F.3d at 678. Applying these standards, transfer to Connecticut is clearly warranted.

The two cases—this matter and the Connecticut action—involve the same relevant parties. All of the Plaintiffs in this case are named parties to both cases: the plaintiffs here are defendants in

the Connecticut action. Moreover, some of the defendants named by Plaintiffs in this lawsuit were previously named by the True View parties as counterclaim defendants in the Connecticut action, including the Accudyne Plan, the TriMas Plan, the Sasol Plan, and Ms. Filla. Cigna has also brought the Connecticut action on behalf of the plans in its capacity as authorized claims administrator.[36]

The *Goodman* court recognized that while Cigna was not a named party in the Texas action, "Cigna and its conduct is mentioned on nearly every page (and in nearly every paragraph)" of the complaint. Ex. 5 at p. 11. The same holds true for the Complaint in this case. Moreover, because Cigna brought the Connecticut action on behalf of employer plans and True View was a party to both actions, the *Goodman* court found "substantial overlap in parties." *Id.* Fifth Circuit authority does not require that the named parties be completely identical. *See, e.g.*, *Save Power*, 121 F.3d at 950 (first-to-file rule does not require that parties or issues be identical); *DocRX*, 2015 WL 3503170, at *4. All that is required is substantial overlap between the parties—a standard easily satisfied here.

### 3.      The two lawsuits involve substantially identical legal and factual issues

Similarly, the factual and legal issues in the Connecticut case and this case substantially overlap—indeed, they are largely identical. Both lawsuits require interpretation of the same language from Cigna's plans, which excludes coverage for "charges which you [the member] are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan," and "charges which would not have been made if the person had no insurance." Cigna seeks a declaration in the Connecticut case that this language renders claims non-covered when the provider waives the plan member's cost-share obligations, while in this Texas case Plaintiffs contend that Cigna's interpretation is wrong. Both cases also involve the propriety of the True View parties' "fee-forgiveness" policy. Cigna alleges that True View parties' "fee-forgiveness"

---

[36] *See* Ex. 1, ¶¶ 11, 29. Through their administrative services agreements with Cigna, each of the Plans have expressly authorized Cigna to take steps to recover overpayments on its behalf.

policy is a fraudulent and outright illegal scam, while the True View parties contend that Cigna's practice of denying payments to providers who engage in "fee-forgiving" is wrong. Moreover, both lawsuits concern the True View parties' allegations that Cigna systematically and fraudulently designated out-of-network claims as being subject to a phony contractual obligation.[37]

While the *Goodman* court recognized that the plan's alleged misconduct was not at issue in the Connecticut action, the court found that the Connecticut court would "examine similar relationships and agreements between similarly situated parties," and both actions would require interpretation of language in Cigna's contracts and the True View's fee-waiver decisions for patients. Ex. 5 at pp. 12-13. For the same reasons in *Goodman*, there is substantial similarity among the issues to be decided in the two actions.

### 4.     The types of evidence in the two lawsuits will be similar

Identical pleadings aside, the proof needed  in each lawsuit is likely to be similar. In order to prove its case against the True View parties in Connecticut, Cigna will likely need to introduce plan documents, provide testimony and documentation concerning the processing of claims from the True View parties, and demonstrate why the claims submitted by the True View parties are not covered by the various plans. Similarly, to prevail in this lawsuit in Texas, Plaintiffs will need to introduce plan documents, provide testimony and documentation concerning the processing of

---

[37] The counterclaim allegations brought by the counterclaim defendants in Connecticut (Plaintiffs here) are substantially similar to their claims here. *Compare* Ex. 8 (True View parties' Counterclaim) at p. 31, ¶¶ 45-46 ("Cigna knowingly and systematically mislabeled the . . . claims with the 'contractual obligation' code . . . to fraudulently lower the reimbursement due to [the True View parties]"); *Id.* at p. 24, ¶ 2 ("Cigna justifies its unwillingness to pay on a tortured reading of exclusions allegedly found in the Plans. Namely, Cigna asserts that the Plans require [the True View parties] to bill patients for, and collect from patients, the full measure of any applicable deductible or coinsurance amount [and] . . . failure to do so triggers exclusions in the Plans, leaving [the True View parties] with no entitlement to payment for their services."); Docket No. 1 at p. 73, ¶ 293 ("Cigna applied a fabricated Contractual Obligation ("CO") code [and] . . . rather than issuing payment of plan funds, Cigna implemented its "fee-forgiveness" scam to wrongfully refuse payment to the providers under a false plan exclusion."); *Id.* at p. 70, ¶ 283 ("Cigna fraudulently deceived [the True View parties] . . . by informing [them] that the Entitled Amounts owed to [the True View parties] were 'denied' as a result of Plaintiffs' 'failure' to collect the patient's out of pocket expenses.).

claims from Plaintiffs, and demonstrate why the claims they submitted are covered by the various plans. Moreover, evidence concerning Cigna's "in-network" versus "out-of-network" payments will be relevant to both the counterclaims in Connecticut and Plaintiffs' case here. This is a "classic example of the duplicative and inefficient expenditure of judicial resources that occurs when more than one court is asked to hear the same dispute." *See Wells Fargo*, 631 F. Supp. 2d at 848.

**D.     None Of The Exceptions To The First-to-File Rule Apply In This Case**

A district court may decline to apply the "first-to-file" rule if a litigant demonstrates truly "compelling circumstances" that would warrant maintaining the second-filed action in its current forum. *See Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("In the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case."). No such circumstances are present here.

The only such "compelling circumstance" commonly recognized is the "anticipatory suit exception." Courts sometimes invoke this exception when a "first-filed case" was an anticipatory action filed solely to win the race to the courthouse. *See, e.g., Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at **4-5 (S.D. Tex. June 2, 2009). Cigna filed the Connecticut case on December 11, 2014—almost 18 months before this action was filed. It is clear that there was no "race to the courthouse" in this dispute. Moreover, the anticipatory suit exception is primarily applied "to avoid penalizing a party that has attempted to settle a dispute out of court." *Id.*; *see also Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) ("Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit."). The various parties in these two overlapping cases—the Plans, True View and its affiliates and Cigna—did not engage in any pre-suit settlement negotiations, rendering the exception inapplicable. The *Goodman* court found that True

-18-

View failed to show that the Connecticut action was brought in bad faith or that Cigna induced an opposing party to delay filing suit. Ex. 5 at p. 17. For the same reasons, there are no circumstances here to preclude application of the first-to-file rule.

## V. CONCLUSION

"To properly apply the first-to-file rule, the district court need only find that substantial overlap is *likely* between its case and a pending case in another federal court that was filed previously." *Luckett*, 2008 WL 534760, at *3 (emphasis added). That standard is easily satisfied here. Because the first-filed Connecticut case substantially overlaps with this case, the Court should grant Defendants' motion and transfer this case to the United States District Court for the District of Connecticut.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court grant this Motion to Transfer Case to District of Connecticut and pray for such other and further relief to which they may be justly entitled.

HOU:3718280.2

Respectfully submitted,

By:  *s/ John B. Shely*

    JOHN B. SHELY
    State Bar No. 18215300
    Southern District No. 7544
    ANDREWS KURTH LLP
    600 Travis, Suite 4200
    Houston, Texas 77002
    Telephone: (713) 220-4105
    Facsimile:   (713) 220-4285
    *jshely@andrewskurth.com*

OF COUNSEL:
ANDREWS KURTH LLP
    and
MITCHELL A. REID
State Bar No. 24037346
Southern District No. 34728
BRIDGET B. VICK
State Bar No. 24069444
Southern District No. 1061856
*mreid@andrewskurth.com*
*bvick@andrewskurth.com*

**ATTORNEY-IN-CHARGE FOR DEFENDANTS AARON'S, INC. EMPLOYEE WELFARE BENEFITS PLAN; JOHN KARR, AS ALLEGED PLAN ADMINISTRATOR OF AARON'S, INC. EMPLOYEE WELFARE BENEFITS PLAN; ACCUDYNE INDUSTRIES, LLC EMPLOYEE BENEFITS PLAN; DENISE DARAB, AS ALLEGED PLAN ADMINISTRATOR OF ACCUDYNE INDUSTRIES, LLC EMPLOYEE BENEFITS PLAN; BASF CORPORATION EMPLOYEE BENEFIT PLAN; GEORGE H. MUSKAL, AS ALLEGED PLAN ADMINISTRATOR OF BASF CORPORATION EMPLOYEE BENEFIT PLAN; CACI INTERNATIONAL INC WELFARE BENEFITS PLAN AND ITS PLAN ADMINISTRATOR; DAVITA HEALTH & WELFARE PLAN; CYNTHIA BAXTER, AS ALLEGED PLAN ADMINISTRATOR OF DAVITA HEALTH & WELFARE PLAN; EXPRESS CARE PLAN, GEORGE JOHNSON, AS ALLEGED PLAN ADMINISTRATOR OF EXPRESS CARE PLAN; SATAKE USA, INC. WELFARE BENEFIT PLAN; JOHN KRISTEK, AS ALLEGED PLAN ADMINISTRATOR OF SATAKE USA, INC. WELFARE BENEFIT PLAN; TRIMAS CORPORATION WELFARE BENEFIT PLAN; JILL STRESS, AS ALLEGED PLAN ADMINISTRATOR OF TRIMAS CORPORATION WELFARE BENEFIT PLAN**

-20-

### CERTIFICATE OF CONFERENCE

I hereby certify that on September 19, 2016, counsel for Defendants conferred with counsel for Plaintiffs and Plaintiffs are opposed to the relief requested herein.

_s/Mitchell A. Reid_
Mitchell A. Reid

### CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users:"

Rustam Abedinzadeh
_rabedinzadeh@altushealthsystem.com_

Nasir N. Pasha
_pasha@pashalaw.com_

Randall A. Constantine
_rconstantine@mazconlaw.com_

Alia S. Wynne
_awynne@fisherphillips.com_

Michael B. Bennett
_michael.bennett@bakerbotts.com_

Chris Hanslik
_chanslik@boyarmiller.com_

Carmen Jo Rejda-Ponce
_crejdaponce@germer.com_

_s/John B. Shely_
John B. Shely